## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| SAMUEL WYSE, | |
| Plaintiff, | Civil Action No.: |
| v. | |
| JENNIFER GRANHOLM, as Secretary of the Department of Energy, | |
| Defendant. | **JURY TRIAL DEMANDED** |

## COMPLAINT

COMES NOW Plaintiff Samuel Wyse and brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Plaintiff alleges that Defendant Jennifer Granholm, as Secretary of the Department of Energy subjected him to discrimination based on race, color, and national origin, and retaliation for engaging in protected activities, respectfully showing as follows:

### JURISDICTION AND VENUE

1.

This Court has original jurisdiction over the subject matter of this civil action pursuant to 28 U.S.C. §§ 1331, 1343, & 1391 and the enforcement provisions of Title VII of the Civil Rights Act.

1

2.

Venue is proper in this judicial district and the division of this Court because the events underlying this action occurred in Henry County, Georgia, which is located in this judicial district and division, pursuant to 28 U.S.C. § 1391, 42 U.S.C. § 2000e-5(f)(3), and the Rules of this Court.

## PARTIES

3.

Plaintiff Samuel Wyse (hereinafter, "Plaintiff" or "Wyse") is a citizen of the United States and a resident of Georgia.

4.

At all times relevant times, Mr. Wyse was considered a covered, non-exempt employee under Title VII of the Civil Rights Act.

5.

Defendant Jennifer Granholm, as Secretary of the Department of Energy, (hereinafter, "Defendant") may be served by delivering or sending a copy of the Summons and Complaint to the United States Attorney for the Northern District of Georgia, with copies to the Attorney General of the United States and the General Counsel of the Department of Defense.  Fed. R. Civ. P. 4(i).

6.

Defendant is a covered employer within the meaning of Title VII of the Civil Rights Act.

## STATEMENT OF FACTS

7.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 6, as if the same were set forth herein.

8.

This instant action arose more than a decade ago, as early as 2009.

9.

Mr. Wyse was formerly employed with the U.S. Department of Energy at the Savannah River Operations Office in Aiken, South Carolina as the Lead Industrial Relations Specialist.   Just prior to his ultimate retirement, Mr. Wyse was on a Flexible Work Agreement, allowing him to work out of Stockbridge, Georgia.

10.

At all relevant times, David Hepner, Director of the Acquisitions Operations Division was his immediate supervisor.

11.

From the time that Mr. Wyse was transferred under Director Hepner's supervision, Mr. Wyse felt as though Director Hepner had a problem with him for some unknown reason, and Director Hepner did not accept Mr. Wyse's work product generally.

12.

Director Hepner would frequently scrutinize Mr. Wyse's work product, despite the fact that it was entirely consistent with the applicable regulations and guidance, and Director Hepner would often reword Mr. Wyse's work product so that it would appear to have been drafted by Director Hepner, himself.

13.

Mr. Wyse stood by his work, which appeared to bother Director Hepner further.

14.

From that point, Director Hepner, who is a white male, apparently took even greater issue with Mr. Wyse.

15.

It was then that Director Hepner would refer to Mr. Wyse – who is black, African-American, and originated from Sierra Leone – as the terms "boy" and

"Sambo."  These are terms that are extremely offensive to individuals who are black or African American and have historically-racist connotations.

16.

In response, Mr. Wyse contacted Director Hepner by telephone and explained that he did not appreciate this terminology and was offended by it.  Mr. Wyse told Director Hepner that he should only be referred to by his actual name.

17.

After objecting to this treatment, Director Hepner, who was Mr. Wyse's direct supervisor, began avoiding Mr. Wyse entirely, refusing to contact Mr. Wyse, despite the fact that Mr. Wyse was on a "Med-Flex-Work Agreement" and telephonic and electronic communication was essential for Mr. Wyse to be able to perform his job.

18.

Soon thereafter, Director Hepner, who was the individual responsible for Mr. Wyse's time and attendance records, began making changes to Mr. Wyse's records.

19.

These changes resulted in adverse consequences to Mr. Wyse's compensation and his credit that he would later receive when he retired.  Critically, while these actions do not form the basis of the instant litigation, they are substantially similar

to those alleged herein.

20.

For example, Director Hepner was deducting the time that Mr. Wyse had accrued for leave, including taking time for weekends, even though Mr. Wyse worked a regular five-day work week and was not scheduled to work those days.

21.

Mr. Wyse reported Director Hepner's harassment to other supervisors.

22.

Director Hepner was apparently upset that Mr. Wyse reported his conduct to other supervisors at Defendant's Savannah River Site, including the Deputy Manager.

23.

In March 2010, Director Hepner made additional changes to Mr. Wyse's time and attendance records.  Critically, as his direct supervisor, Director Hepner was the primary and *only person* who would have made these changes.

24.

Mr. Wyse ultimately initiated EEO activity with the Department of Energy in Summer 2010.

25.

After initiating EEO activity, Mr. Wyse and DOE entered into a settlement agreement, in which Mr. Wyse agreed to retire and the agency agreed to correct the Annual Leave and pay a small lump sum payment for damages caused by the changes to time and attendance records and leave.  The agency was also required to restore hours of Sick leave.

26.

However, as is relevant to the instant civil action, after Mr. Wyse's retirement, in the pay period ending on February 12, 2011, someone at the Department of Energy, once again, altered Mr. Wyse's timecards. Director Hepner was still working for the agency and still had access to Mr. Wyse's time and attendance records, and this action appeared similar to changes that Director Hepner had previously made during Mr. Wyse's employment.  Critically, these changes were made after the initial settlement agreement, and thus, were not addressed in the initial EEO activity.

27.

Mr. Wyse subsequently initiated a second EEO complaint, alleging that the Department of Energy failed to comply with the initial settlement agreement.  In 2016, the EEOC found that the agency failed to comply with the settlement agreement by restoring 98.5 hours of sick leave that should have been added to Mr.

Wyse's pension.  The EEOC found that the agency was in breach and the EEOC ordered the agency's compliance. However, to date, the agency has failed to provide sufficient proof that it complied with the EEOC decision.

28.

Mr. Wyse's second EEO complaint was based on Defendant's breach of the settlement agreement and not for changes made to Mr. Wyse's time and attendance records after his retirement.

29.

Meanwhile, in May 2018, Mr. Wyse received correspondence from the Defense Finance and Accounting Service ("DFAS"), which indicated that *additional*, retroactive, post-retirement changes had been made to Mr. Wyse's time and attendance records in 2011.

30.

According to DFAS' letter, these changes resulted in what were considered "overpayments" to Mr. Wyse's retirement annuity and claimed that Mr. Wyse had to repay.

31.

Said changes were not the same as the ones that Mr. Wyse had referenced in prior EEOC activity, and they resulted in DFAS first seeking to collect and garnish

funds from Mr. Wyse.

32.

The debt that DFAS attempted to collect from Mr. Wyse happened to be in the same amount as the agency's prior, erroneous attempts to collect $5,323.92 for a supposed overpayment.

33.

According to DFAS correspondence on July 25, 2018, the changes were made to Mr. Wyse's time and attendance records and Civilian Leave & Earnings Statement.  The changes were made to the pay period ending on February 11, 2011.

34.

Subsequently, Mr. Wyse has taken substantial measures to dispute the changes to his time and attendance records and seek supporting documentation. However, Mr. Wyse was largely ignored by the agencies, including a failure and refusal to produce Civilian Leave and Earnings Statements, along with time and attendance records, reflecting not only Mr. Wyse's time and attendance, but the changes that were supposedly made in February 2011.

35.

After Defendant's refusal to produce the records and initially stop the garnishment and debt collection efforts, Mr. Wyse attempted to initiate EEO activity.

However, Mr. Wyse' s effort to begin this process were denied by Defendant, because, according to the agency, Mr. Wyse was no longer an active employee of the Department of Energy.

36.

After appealing Defendant's decision not to process his EEO complaint, the Equal Employment Opportunity Commission issued a decision that required DOE to process Mr. Wyse's complaint. (EEOC Appeal No. 2019000212.)

37.

Since Mr. Wyse filed his most recent EEO complaint, Defendant has disclaimed responsibility for the subsequent changes and attempts to garnish Mr. Wyse's retirement benefits, instead blaming DFAS and the Office of Personnel Management ("OPM").

38.

However, Defendant is necessarily responsible.

39.

Defendant had control over Mr. Wyse's time and attendance records, even after he retired, or even if Defendant had forwarded such records for action by another agency.

40.

OPM's and DFAS's actions, as alleged herein, were necessarily the result of the changes that Defendant made to Mr. Wyse's time and attendance records.

41.

As Mr. Wyse's direct supervisor, Director Hepner made the subsequent changes to Mr. Wyse's time and attendance records.

42.

Director Hepner was the only person responsible for making these changes, and anything that OPM or DFAS might have done was premised on the changes made by Director Hepner in the scope of his employment with Defendant.

43.

Director Hepner was the only one who had access to Mr. Wyse's time and attendance record, meaning that it was his actions that resulted in the most recent attempts to garnish wages.

44.

Moreover, after his retirement, Mr. Wyse did not provide any attestation to transactions made his time and attendance records.  Given that an attestation, verification, or approval is generally required to make changes to time and attendance records, any such changes made by Director Hepner would have been

made without the required attestation, or in the event that such an attestation appears to have been provided, it is necessarily erroneous and fraudulent.

45.

In addition to the fact that Director Hepner was the sole person with the ability to have made such changes, Director Hepner's previous actions suggest that he was the person responsible.  Specifically, Director Hepner had previously expressed his displeasure and retaliatory animus when Mr. Wyse opposed harassment and discrimination based on his race, color, and national origin.

46.

Director Hepner was clearly upset with Mr. Wyse for engaging in EEO activity, in which Director Hepner had been named as the responsible management official.  Alternatively, Director Hepner may have taken these measures for the same reasons as those for the initial actions underlying the EEO activity – because of Mr. Wyse's race, color, and national origin.

47.

In addition to actions for which Director Hepner was specifically responsible, Defendant further exacerbated this situation by ignoring Mr. Wyse's request for action to stop the erroneous collection and provide documentation reflecting its compliance with the EEOC's February 2016 order, as well as the documents that

would have enabled Mr. Wyse to ascertain what changes were made, in 2011 or otherwise, that resulted in the 2018 attempt to collect the debt.  Like Director Hepner, Defendant's actions were predicated on Mr. Wyse's prior EEO activity.

48.

Critically, the changes to Mr. Wyse's time and attendance records, as addressed in DFAS' May 2018 letter were made after both Mr. Wyse and Defendant resolved his first EEO complaint and when he retired in October 2010.

49.

In addition to damage that these events have caused to Mr. Wyse's financial affairs, the events and the resulting emotional distress have also caused Mr. Wyse to incur a substantial amount of personal time and resources and they have been the direct cause of adverse consequences to his person and his well-being.

Procedural Background

50.

In June or July 2019, Mr. Wyse filed his formal EEO complaint, alleging that Defendant had subjected him to discrimination based on race, color, and national origin, and retaliation/reprisal after he engaged in protected activities, all in violation of Title VII of the Civil Rights Act.  The EEOC assigned Mr. Wyse' Charge Number 415-2020-01181.

51.

After Defendant completed its investigation, Mr. Wyse requested that Defendant issue a final decision, finding no discrimination.

52.

Mr. Wyse subsequently filed an appeal of Defendant's final decision to the Equal Employment Opportunity's Office of Federal Operations.

53.

On March 28, 2022, the Equal Employment Opportunity Commission issued its decision on the appeal. Said decision was sent to both Mr. Wyse by mail on the same day, and it was received at some point thereafter.

54.

As a result, Mr. Wyse has exhausted his administrative remedies as to his formal EEO complaint, and she is filing the instant action within ninety days of his receipt of his notice to file a civil action.

**COUNT I:**
**DISCRIMINATION BASED ON RACE**
**IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT**

55.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 54, as if the same were set forth herein.

56.

Under Title VII of the Civil Right Act, it is unlawful for an employer to discriminate against or harass any of its employees on the basis of race. *See* 42 U.S.C. § 2000e-2(a).

57.

As alleged herein, Defendant and Plaintiff are a covered, non-exempt employer and employee under Title VII, respectively. *See* 42 U.S.C. §§ 2000e & 2000e-1.

58.

Plaintiff is a member of a protected class in that he is black or African American.

59.

Plaintiff was qualified for his position, and he was otherwise entitled to the compensation and benefits that he received, and should have received, during his employment.

60.

As alleged herein, Plaintiff was subjected to an adverse employment action to the extent that retroactive changes were made to his time and attendance records and Civilian Leave & Earnings Statements after his retirement.

61.

These retroactive changes made to Plaintiff's time and attendance records and Civilian Leave & Earning Statements were unwarranted and did not accurately reflect the time that Plaintiff worked or the other benefits that he was otherwise entitled.

62.

These retroactive changes made to Plaintiff's time and attendance records and Civilian Leave & Earning Statements resulted in other agencies attempting to collect a debt from Plaintiff.

63.

Plaintiff's former supervisor, David Hepner, was the individual responsible for making said changes to Plaintiff's time and attendance records and Civilian Leave & Earning Statements.

64.

Based on Mr. Hepner's treatment of Plaintiff, including explicit comments that Mr. Hepner made implicating Plaintiff's race, gives rise to an interference that his actions were rooted in discriminatory intent.

65.

Because it was Plaintiff's direct supervisor who was responsible for the discrimination, Defendant is liable for such conduct.

66.

Plaintiff also notified upper management for Defendant of the conduct alleged herein, but Defendant failed and refused to take appropriate remedial action. As a result, Defendant is liable for the conduct at issue.

67.

Defendant is unable to articulate any legitimate, nondiscriminatory reason for the aforementioned conduct based on race.

68.

Plaintiff has been injured by Defendant's discrimination based on race, and Plaintiff is entitled to all damages allowed under Title VII of the Civil Rights Act, including back pay, front pay and injunctive relief, compensatory and punitive damages in the amount of no less than $300,000.00, and reasonable attorney's fees and costs of litigation, all in an amount to be proven at trial.

**COUNT II:**
**DISCRIMINATION BASED ON COLOR**
**IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT**

69.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 54, as if the same were set forth herein.

70.

Under Title VII of the Civil Right Act, it is unlawful for an employer to discriminate against or harass any of its employees on the basis of color.  *See* 42 U.S.C. § 2000e-2(a).

71.

As alleged herein, Defendant and Plaintiff are a covered, non-exempt employer and employee under Title VII, respectively.  *See* 42 U.S.C. §§ 2000e & 2000e-1.

72.

Plaintiff is a member of a protected class in that he is black.

73.

Plaintiff was qualified for his position, and he was otherwise entitled to the compensation and benefits that he received, and should have received, during his employment.

74.

As alleged herein, Plaintiff was subjected to an adverse employment action to the extent that retroactive changes were made to his time and attendance records and Civilian Leave & Earnings Statements after his retirement.

75.

These retroactive changes made to Plaintiff's time and attendance records and Civilian Leave & Earning Statements were unwarranted and did not accurately reflect the time that Plaintiff worked or the other benefits that he was otherwise entitled.

76.

These retroactive changes made to Plaintiff's time and attendance records and Civilian Leave & Earning Statements resulted in other agencies attempting to collect a debt from Plaintiff.

77.

Plaintiff's former supervisor, David Hepner, was the individual responsible for making said changes to Plaintiff's time and attendance records and Civilian Leave & Earning Statements.

78.

Based on Mr. Hepner's treatment of Plaintiff, including explicit comments that Mr. Hepner made implicating Plaintiff's color, gives rise to an interference that his actions were rooted in discriminatory intent.

79.

Because it was Plaintiff's direct supervisor who was responsible for the discrimination, Defendant is liable for such conduct.

80.

Plaintiff also notified upper management for Defendant of the conduct alleged herein, but Defendant failed and refused to take appropriate remedial action.  As a result, Defendant is liable for the conduct at issue.

81.

Defendant is unable to articulate any legitimate, nondiscriminatory reason for the aforementioned conduct based on color.

82.

Plaintiff has been injured by Defendant's discrimination based on color, and Plaintiff is entitled to all damages allowed under Title VII of the Civil Rights Act, including back pay, front pay and injunctive relief, compensatory and punitive

damages in the amount of no less than $300,000.00, and reasonable attorney's fees and costs of litigation, all in an amount to be proven at trial.

## COUNT III:
## DISCRIMINATION BASED ON NATIONAL ORIGIN
## IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT

83.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 54, as if the same were set forth herein.

84.

Under Title VII of the Civil Right Act, it is unlawful for an employer to discriminate against or harass any of its employees on the basis of national origin. *See* 42 U.S.C. § 2000e-2(a).

85.

As alleged herein, Defendant and Plaintiff are a covered, non-exempt employer and employee under Title VII, respectively.  *See* 42 U.S.C. §§ 2000e & 2000e-1.

86.

Plaintiff is a member of a protected class in that he is originally from Sierra Leon.

87.

Plaintiff was qualified for his position, and he was otherwise entitled to the compensation and benefits that he received, and should have received, during his employment.

88.

As alleged herein, Plaintiff was subjected to an adverse employment action to the extent that retroactive changes were made to his time and attendance records and Civilian Leave & Earnings Statements after his retirement.

89.

These retroactive changes made to Plaintiff's time and attendance records and Civilian Leave & Earning Statements were unwarranted and did not accurately reflect the time that Plaintiff worked or the other benefits that he was otherwise entitled.

90.

These retroactive changes made to Plaintiff's time and attendance records and Civilian Leave & Earning Statements resulted in other agencies attempting to collect a debt from Plaintiff.

91.

Plaintiff's former supervisor, David Hepner, was the individual responsible for making said changes to Plaintiff's time and attendance records and Civilian Leave & Earning Statements.

92.

Based on Mr. Hepner's treatment of Plaintiff, including explicit comments that Mr. Hepner made implicating Plaintiff's national origin, gives rise to an interference that his actions were rooted in discriminatory intent.

93.

Because it was Plaintiff's direct supervisor who was responsible for the discrimination, Defendant is liable for such conduct.

94.

Plaintiff also notified upper management for Defendant of the conduct alleged herein, but Defendant failed and refused to take appropriate remedial action.  As a result, Defendant is liable for the conduct at issue.

95.

Defendant is unable to articulate any legitimate, nondiscriminatory reason for the aforementioned conduct based on national origin.

96.

Plaintiff has been injured by Defendant's discrimination based on national origin, and Plaintiff is entitled to all damages allowed under Title VII of the Civil Rights Act, including back pay, front pay and injunctive relief, compensatory and punitive damages in the amount of no less than $300,000.00, and reasonable attorney's fees and costs of litigation, all in an amount to be proven at trial.

## COUNT IV:
## RETALIATION
## IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT

97.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 54, as if the same were set forth herein.

98.

Under Title VII of the Civil Right Act, it is unlawful for an employer to retaliate against an employee because they have opposed any unlawful employment practice. See 42 U.S.C. § 2000e-3(a). Similarly, it is unlawful to retaliate against an employee who has made a charge, testified, assisted, or participated in an investigation or proceeding. *Id*.

99.

As alleged herein, Defendant and Plaintiff are a covered, non-exempt employer and employee under Title VII, respectively. *See* 42 U.S.C. §§ 2000e & 2000e-1.

100.

Plaintiff engaged in protected activities when he opposed Defendant prior discrimination against him based on race, color, and national origin, most notably, by filing a formal EEO complaint against Defendant in October 2010.

101.

Plaintiff was qualified for his position, and he was otherwise entitled to the compensation and benefits that he received, and should have received, during his employment.

102.

As alleged herein, Plaintiff was subjected to an adverse employment action to the extent that retroactive changes were made to his time and attendance records and Civilian Leave & Earnings Statements after his retirement.

103.

These retroactive changes made to Plaintiff's time and attendance records and Civilian Leave & Earning Statements were unwarranted and did not accurately

reflect the time that Plaintiff worked or the other benefits that he was otherwise entitled.

104.

These retroactive changes made to Plaintiff's time and attendance records and Civilian Leave & Earning Statements resulted in other agencies attempting to collect a debt from Plaintiff.

105.

Plaintiff's former supervisor, David Hepner, was the individual responsible for making said changes to Plaintiff's time and attendance records and Civilian Leave & Earning Statements.

106.

Plaintiff's former supervisor, David Hepner, had expressed displeasure when Plaintiff previously opposed his discriminatory comments, and said former supervisor was aware that Plaintiff had filed a formal EEO complaint, and that Plaintiff had named said former supervisor as the responsible management official. These facts give rise to an inference of retaliatory intent.

107.

Because it was Plaintiff's direct supervisor who was responsible for the retaliation, Defendant is liable for such conduct.

108.

Plaintiff also notified upper management for Defendant of the conduct alleged herein, but Defendant failed and refused to take appropriate remedial action.  As a result, Defendant is liable for the conduct at issue.

109.

Defendant is unable to articulate any legitimate, nondiscriminatory reason for the aforementioned conduct based on Plaintiff's participation in protected activities.

110.

Plaintiff has been injured by Defendant's retaliation, and Plaintiff is entitled to all damages allowed under Title VII of the Civil Rights Act, including back pay, front pay and injunctive relief, compensatory and punitive damages in the amount of no less than $300,000.00, and reasonable attorney's fees and costs of litigation, all in an amount to be proven at trial.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Samuel Wyse respectfully prays for the following relief:

1)    That Summons and Process be issued to Defendant Jennifer Granholm, as Secretary of the Department of Energy, and that Defendant be served as provided by law;

2)    That this matter be tried before a jury;

3)    That judgment be awarded for and in favor of Plaintiff on Count I for discrimination based on race, and grant Plaintiff all relief allowable under Title VII of the Civil Rights Act;

4)    That judgment be awarded for and in favor of Plaintiff on Count II for discrimination based on color, and grant Plaintiff all relief allowable under Title VII of the Civil Rights Act;

5)    That judgment be awarded for and in favor of Plaintiff on Count III for discrimination based on national origin, and grant Plaintiff all relief allowable under Title VII of the Civil Rights Act;

6)    That judgment be awarded for and in favor of Plaintiff on Count IV for retaliation, and grant Plaintiff all relief allowable under Title VII of the Civil Rights; Act; and,

7)    For such other relief as this Court shall seem just and proper.

[*Signature Page Follows*]

Respectfully submitted, this 27th day of June, 2022.

KENNETH E. BARTON III
Georgia Bar No. 301171
EMILY M. WALKER
Georgia Bar No. 221826
*Attorneys for Plaintiff*

COOPER, BARTON & COOPER, LLP
170 College Street
Macon, Georgia 31201
(478) 841-9007 telephone
(478) 841-9002 facsimile
keb@cooperbarton.com
emw@cooperbarton.com