IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SAMUEL WYSE,

     Plaintiff,

v.

JENNIFER GRANHOLM, *as Secretary of the Department of Energy*,

     Defendant.

CIVIL ACTION NO.

1:22-CV-2561-JPB-CMS

## FINAL REPORT AND RECOMMENDATION

Plaintiff Samuel Wyse ("Wyse"), a former employee of the Department of Energy (the "DOE"), brought this case against Jennifer Granholm ("Defendant"), as the Secretary of the DOE, alleging that Defendant subjected him to discrimination based on race, color, and national origin, and that Defendant retaliated against him for engaging in protected activities. Pending before the Court is Defendant's Motion to Dismiss, or in the Alternative, to Transfer Venue (the "Motion to Dismiss") [Doc. 12], which seeks to dismiss this action for improper venue under Federal Rule of Civil Procedure 12(b)(3). Alternatively, Defendant seeks to transfer venue in the case to the District of South Carolina. Wyse filed a response to the Motion to Dismiss, [Doc. 13], and Defendant filed a reply in support of the Motion to Dismiss,

[Doc. 14].  For the reasons stated below, I will recommend that the portion of the Motion seeking to transfer venue be granted.

## I.   PROCEDURAL BACKGROUND

On June 27, 2022, Wyse filed his Complaint, asserting four claims: (1) race discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended (Count I); (2) discrimination based on color, in violation of Title VII (Count II); (3) national origin discrimination in violation of Title VII (Count III); and (4) retaliation in violation of Title VII (Count IV).  [Doc. 1, Compl.].  On February 27, 2023, Defendant filed her Motion to Dismiss, or, in the Alternative, to Transfer Venue, arguing that venue was improper in this District because the allegedly unlawful employment practices occurred at Wyse's former workplace in South Carolina. [Doc. 12].  The parties have fully briefed the Motion.

## II.   LEGAL STANDARD

A party may move to dismiss a case for improper venue under Federal Rule of Civil Procedure 12(b)(3).  FED. R. CIV. P. 12(b)(3).  When a defendant challenges venue, "the plaintiff has the burden of showing that venue in the forum is proper." *Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004).   In considering a motion under Rule 12(b)(3), a court accepts the facts in the plaintiff's complaint as true.  *Id.*  A court also may "consider matters outside the pleadings if

presented in proper form by the parties." *MGC Commc'ns, Inc. v. BellSouth Telecomms., Inc.*, 146 F. Supp. 2d 1344, 1349 (S.D. Fla. 2001). Where there is a conflict between the allegations in the complaint and the evidence outside the pleadings, the court "must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff." *Wai*, 315 F. Supp. 2d at 1268.

### III.   **FACTUAL BACKGROUND**

Wyse resides in Georgia. [Compl. ¶ 3]. Defendant is the Secretary of the DOE. [*Id.* ¶ 5]. Wyse states that "[v]enue is proper in this judicial district and the division of this Court because the events underlying this action occurred in Henry County, Georgia, which is located in this judicial district and division." [*Id.* ¶ 2].

Wyse was formerly employed with the DOE as the Lead Industrial Relations Specialist at the Savannah River Operations Office in Aiken, South Carolina. [Compl. ¶ 9]. Wyse alleges that, just prior to his ultimate retirement, he was on a Flexible Work Agreement that allowed him to work from Stockbridge, Georgia. [*Id.*]. Wyse is "black, African-American, and originated from Sierra Leone." [*Id.* ¶ 15]. David Hepner, Director of the Acquisitions Operations Division ("Hepner"), was Wyse's immediate supervisor. [*Id.* ¶ 10]. Hepner is a white male. [*Id.* ¶ 14].

According to Wyse, from the time that he came under Hepner's supervision, he "felt as though [Hepner] had a problem with him for some unknown reason, and

[Hepner] did not accept Mr. Wyse's work product generally." [Compl. ¶ 11]. Wyse alleges that Hepner "would frequently scrutinize Mr. Wyse's work product, despite the fact that it was entirely consistent with the applicable regulations and guidance, and [Hepner] would often reword Mr. Wyse's work product so that it would appear to have been drafted by [Hepner] himself." [*Id.* ¶ 12]. Wyse states that he "stood by his work," which appeared to bother [Hepner] [*id.* ¶ 13], and that Hepner "apparently took even greater issue with" him [i*d.* ¶ 14]. Hepner allegedly began referring to Wyse using the terms "boy" and "Sambo." [*Id.* ¶ 15.]

Wyse alleges that he called Hepner, explained that he did not appreciate this terminology and found it offensive, and told Hepner that he should only be referred to by his actual name. [Compl. ¶ 16]. Hepner allegedly began to avoid Wyse entirely and to refuse to contact him, even though "Wyse was on a 'Med-Flex-Work Agreement' and telephonic and electronic communication was essential for Mr. Wyse to be able to perform his job." [*Id.* ¶ 17]. Wyse alleges that Hepner, who was responsible for Wyse's time and attendance records, began making changes to those records. [*Id.* ¶ 18]. According to Wyse, those changes adversely affected his compensation and the credit that he would receive upon retiring. [*Id.* ¶ 19]. Those allegations do not form the basis of this litigation; however, Wyse alleges that "they are substantially similar to those alleged herein." [*Id.* ¶ 20].

Specifically, Wyse alleges that Hepner deducted time that Wyse had accrued for leave, including taking time for weekends, although Wyse was not scheduled to work on weekends.  [Compl. ¶ 20].  Wyse reported Hepner's conduct to other supervisors, which apparently upset Hepner.  [*Id.* ¶¶ 21-22].  In March 2020, Hepner allegedly made additional changes to Wyse's time and attendance records.  [*Id.* ¶ 23].

During the summer of 2010, Wyse initiated EEO activity with the DOE.  [Compl. ¶ 24].  Wyse and the DOE ultimately entered into a settlement agreement under which Wyse agreed to retire and the DOE agreed to correct his annual leave, restore hours of sick leave, and pay a small lump sum payment for damages.  [*Id.* ¶ 25].

Wyse alleges that after his retirement, someone at the DOE again altered his timecards.  [Compl. ¶ 26].  Wyse contends that Hepner was still working for DOE and still had access to Wyse's records, and this alteration appeared to be similar to changes that Hepner previously made during Wyse's employment.  [*Id.*].  The initial EEO activity did not address those changes because they occurred after Wyse and DOE entered into the initial settlement agreement.  [*Id.*].

Wyse initiated a second EEO complaint, alleging that the DOE failed to comply with the initial settlement agreement.  [Compl. ¶ 27].  In 2016, the EEOC

found that the DOE failed to comply with the settlement agreement because it did not restore 98.5 hours of sick leave, and it ordered the DOE to comply with that agreement. [*Id.*]. Wyse alleges that, to date, the DOE "has failed to provide sufficient proof that it complied with the EEOC decision." [*Id.*]. According to Wyse, his second EEO complaint was based on Defendant's breach of the settlement agreement, not on changes made to Wyse's time and attendance records after his retirement. [*Id.* ¶ 28].

Wyse alleges that in May 2018, he received correspondence from the Defense Finance and Accounting Service (the "DFAS"), indicating that additional, retroactive post-retirement changes had been made to Wyse's time and attendance records in 2011. [Compl. ¶ 29]. DFAS indicated that those changes resulted in "overpayments" to Wyse's retirement annuity, and it claimed that Wyse had to repay those amounts. [*Id.* ¶ 30]. According to Wyse, those "changes were not the same as the ones that Mr. Wyse had referenced in prior EEOC activity, and they resulted in DFAS first seeking to collect and garnish funds from Mr. Wyse." [*Id.* ¶ 31]. Wyse alleges that "[t]he debt that DFAS attempted to collect from Mr. Wyse happened to be in the same amount as the agency's prior, erroneous attempts to collect $5,323.92 for a supposed overpayment." [*Id.* ¶ 32]. Wyse alleges that DFAS correspondence dated July 25, 2018, indicates that "the changes were made to

Mr. Wyse's time and attendance records and Civilian Leave & Earnings Statement," and "[t]he changes were made to the pay period ending on February 11, 2011." [*Id.* ¶ 33].

Wyse contends that he took "substantial measures to dispute the changes to his time and attendance records and seek supporting documentation," but the agencies "largely ignored" him. [Compl. ¶ 34]. Specifically, Wyse alleges that the agencies failed and refused to produce civilian leave and earnings statements, along with time and attendance records. [*Id.*].

Wyse states that he attempted to initiate EEO activity after the DOE refused to produced records or stop the garnishment and debt collection efforts. [Compl. ¶ 35]. The DOE allegedly denied Wyse's efforts to begin this process because it claimed that Wyse was no longer an active DOE employee. [*Id.*]. Wyse appealed that decision, and the EEOC issued a decision that required the DOE to process Wyse's complaint. [*Id.* ¶ 36]. Wyse alleges that the DOE disclaimed responsibility for the changes and attempts to garnish Wyse's retirement benefits, and that the DOE instead blamed DFAS and the Office of Personnel Management (the "OPM"). [*Id.* ¶ 37]. Wyse, however, contends that the DOE "is necessarily responsible." [*Id.* ¶ 38]. According to Wyse, the DOE had control over his time and attendance records even after he retired or even if the DOE forwarded those records to another agency

for action.  [*Id.* ¶ 39].   Wyse claims that the actions of OPM and DFAS "were necessarily the result of the changes that [the DOE] made" to his time and attendance records."  [*Id.* ¶ 40].

Wyse further alleges that Hepner, as his direct supervisor, made the changes to his records.  [Compl. ¶ 41].   According to Wyse, Hepner "was the only person responsible for making these changes, and anything that OPM or DFAS might have done was premised on the changes made by [Hepner]."  [*Id.* ¶ 42].   Wyse alleges that Hepner was the only one who had access to Wyse's time and attendance record, and that Hepner's actions resulted in the most recent attempts to garnish Wyse's wages.  [*Id.* ¶ 43].   Wyse notes that, after his retirement, he did not provide an attestation to transactions made to his time and attendance records, and, "[g]iven that an attestation, verification, or approval is generally required to make changes to time and attendance records, any such changes made by [Hepner] would have been made without the required attestation" or with a fraudulent attestation.  [*Id.* ¶ 44].   Wyse contends that Hepner's previous actions suggest that Hepner was responsible for the changes.  [*Id.* ¶ 45].   According to Wyse, Hepner was "clearly upset" with him "for engaging in EEO activity."  [*Id.* ¶ 46].   Alternatively, Wyse contends that Hepner "may have taken these measures" based on Wyse's race, color, and national origin. [*Id.*].  Wyse alleges that the DOE "further exacerbated this situation by ignoring Mr.

Wyse's request for action to stop the erroneous collection and provide documentation reflecting its compliance with the EEOC's February 2016 order, as well as the documents that would have enabled Mr. Wyse to ascertain what changes were made, in 2011 or otherwise, that resulted in the 2018 attempt to collect the debt." [*Id.* ¶ 47]. Wyse asserts that the DOE's actions were based on his prior EEO activity. [*Id.*]. According to Wyse, the changes to his time and attendance records were made after the resolution of his first EEO complaint and when he retired in October 2010. [*Id.* ¶ 48].

In June or July 2019, Wyse filed an EEO complaint alleging that the DOE had discriminated against him in violation of Title VII based on his race, color, and national origin and that the DOE had retaliated against him in violation of Title VII. [Compl. ¶ 50]. After the DOE completed its investigation, Wyse requested that the DOE issue a final decision finding no discrimination. [*Id.* ¶ 51]. Wyse then appealed the DOE's final decision to the EEOC's Office of Federal Operations. [*Id.* ¶ 52]. On March 28, 2022, the EEOC issued its decision on the appeal. [*Id.* ¶ 53].

Wyse then filed this lawsuit. Wyse alleges that he "was subjected to an adverse employment action to the extent that retroactive changes were made to his time and attendance records and Civilian Leave & Earnings Statements after his retirement." [Compl. ¶ 60; *see also id.* ¶¶ 74, 88, 102 (making the same allegation)].

9

## IV.   **DISCUSSION**

Defendant argues that venue is improper in this District because the alleged unlawful employment practices at issue occurred at Wyse's former workplace in South Carolina.  Wyse, in turn, contends that venue is appropriate in this District because he was working remotely from this judicial district when he retired, and because his Complaint alleges that this location is the basis for venue.

Courts determine whether venue for a civil action is proper under 28 U.S.C. § 1391, "except as otherwise provided by law."  28 U.S.C. § 1391(e).  Title VII contains its own venue provision.  42 U.S.C. § 2000e-5(f)(3).  Title VII's venue provision supersedes the venue provision set forth in Section 1391(e).  *See Pinson v. Rumsfeld*, 192 F. App'x 811, 817 (11th Cir. 2006) (*per curiam*) ("The venue provisions of § 2000e-5(f)(3) were intended to be the exclusive venue provisions for Title VII employment discrimination actions and . . . the more general provisions of § 1391 are not controlling in such cases.").  Wyse, as the plaintiff in this action, bears the burden to show that venue is proper in this District.  *Id.*

Title VII's venue provision states, in relevant part, that a Title VII action:

> may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the

10

aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office.

42 U.S.C. § 2000e-5(f)(3).  "For purposes of sections 1404 and 1406 of Title 28, the judicial district in which the respondent has his principal office shall in all cases be considered a district in which the action might have been brought."  *Id.*  Thus, an action under Title VII may be brought:

> (1) in any district court in a state where the alleged Title VII violation occurred; (2) in the judicial district where the employment records that pertain to the alleged Title VII violation are maintained; (3) in the judicial district where plaintiff would have worked had there been no Title VII violation; and, if none of the previous three conditions exist, (4) in the judicial district where the defendant's principal office is located.

*Pritchett v. Paschall Truck Lines, Inc.*, 714 F. Supp. 2d 1171, 1173 (M.D. Ala. 2010). Once a defendant challenges venue through a Rule 12(b)(3) motion, the plaintiff has the burden to prove venue.  *Id.* at 1174.

Wyse alleges that Hepner was responsible for the unlawful employment practices at issue—the alleged alterations made to Wyse's time and attendance records.  Hepner worked in the Savannah River Office in South Carolina, and the allegedly unlawful employment actions necessarily occurred in South Carolina.

Venue therefore would be appropriate in South Carolina.   42 U.S.C. § 2000e-5(f)(3).[1]

Wyse argues that venue is appropriate in this District because he teleworked from his home in Georgia during his employment with the DOE.  The allegedly unlawful employment practices alleged in the Complaint, however, occurred after Plaintiff retired.  The fact that Plaintiff may have teleworked from Georgia during his employment with the DOE has no bearing on venue for claims that are based on post-retirement events.  Moreover, Title VII's venue provision does not refer to a plaintiff's place of residence as a possible venue option.  Although Wyse may have felt the effects of the allegedly unlawful employment practices in Georgia, that does not make venue proper in this District.  The question is where the allegedly unlawful employment practices were committed, not where the effects were felt.  *See EEOC v. Store Opening Solutions, Inc.*, Civil Case No. 3:09-cv-63-JTC, 2010 WL 11515507, at *2 (N.D. Ga. Mar. 8, 2010) ("The plain language of § 2000e-5(f)(3) permits a suit to be brought in any judicial district in the state in which the unlawful employment practice was committed, not in any judicial district in the state where the effects of the unlawful employment practice were felt.").

---

[1] Wyse concedes that the DOE does not keep employment records in Georgia and does not have its principal office in Georgia.  [Doc. 13 at 4].

Wyse also argues that venue is appropriate in this District because he would have worked in this District but for the allegedly unlawful employment practices. [Doc. 13 at 2].  This action, however, arises from events that occurred after Wyse's retirement, and this venue provision therefore is not relevant.  42 U.S.C. § 2000e-5(f)(3).[2]

Wyse also cannot establish proper venue in this District based on the allegation in his Complaint that "[v]enue is proper in this judicial district and the division of this Court because the events underlying this action occurred in Henry County, Georgia, which is located in this judicial district and division."  [Compl. ¶ 2].  That allegation is a legal conclusion, and Wyse failed to allege facts to support it.  Indeed, the factual allegations of the Complaint contradict this conclusory assertion.  This allegation therefore does not establish that venue is proper in this District.

For the above reasons, Wyse has failed to show that venue is proper in this District.  Under 28 U.S.C. § 1406, the Court "shall dismiss, or if it be in the interest of justice, transfer such case to any district . . . in which it could have been brought."

---

[2] Similarly, the cases that Wyse cites relating to teleworking are inapplicable here because this case involves allegedly unlawful conduct that occurred *after* Wyse had retired and had stopped teleworking.

28 U.S.C. § 1406(a). In applying Section 1406(a), "the decision whether to transfer a case is left to the sound discretion of the district court and is reviewable only for an abuse of that discretion." *Pinson*, 192 F. App'x at 817 (quoting *Roofing & Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc.*, 689 F.2d 982, 985 (11th Cir. 1982)). Here, venue would be proper in the District of South Carolina because the allegedly unlawful employment actions occurred there. Transfer is more appropriate than dismissal in this case because dismissal might result in Wyse's claims being time-barred. *See Pritchett*, 714 F. Supp. 2d at 1175 (concluding that transfer, rather than dismissal, was appropriate where the plaintiff would be time-barred from filing her claims in the proper venue). I therefore recommend that the Court exercise its discretion to transfer this case to the District of South Carolina instead of dismissing the case for improper venue.

## V.   CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **GRANT** Defendant's Alternative Motion to Transfer Venue [Doc. 12], and that this case be **TRANSFERRED** to the United States District Court for the District of South

Carolina, Aiken Division.  I **FURTHER RECOMMEND** that the Court **DENY AS MOOT** Defendant's Motion to Dismiss for improper venue [Doc. 12].[3]

Because this is a Final Report and Recommendation, and there is nothing further in this action pending before the undersigned Magistrate Judge, the Clerk is **DIRECTED** to terminate the reference.

**SO REPORTED AND RECOMMENDED**, this 5th day of April, 2023.

CATHERINE M. SALINAS
UNITED STATES MAGISTRATE JUDGE

---

[3]Defendant requests a sixty-day extension to respond to the Complaint in the event of a transfer.  Defendant may make that request in the District of South Carolina.